UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIKE ZEYEN, et al, <br><br> Plaintiffs, <br><br> v. <br><br> BOISE SCHOOL DISTRICT NO. 1, et al., <br><br> Defendants. | Case No. 1:18-cv-207-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it motions to dismiss filed by defendants.  The Court

heard oral argument on the motions on January 14, 2019 and took them under

advisement.  After further review, and based on the analysis below, the Court has

decided to grant the motions to the degree they are based on the abstention

doctrine, and will stay this litigation pending resolution of the *Zeyen* appeal in the

Idaho Supreme Court.

## LITIGATION BACKGROUND

This is a class action challenging fees allegedly charged in contravention of

the Idaho Constitution. The Plaintiffs, who have students attending schools in the

Pocatello and Bonneville School Districts, seek to proceed as class representatives

of all patrons – that is, students and parents – in the 115 school districts and charter schools in the state of Idaho. Plaintiffs allege that the fees charged by these school districts violate article IX, § 1 of the Idaho Constitution and constitute a due process violation. They seek declaratory relief, reimbursement of fees charged for the past six years, and certification of a class of plaintiffs and defendants.

This action was preceded by lengthy litigation in the Idaho state courts. Between 1993 and 2005, a series of five appeals were decided by the Idaho Supreme Court challenging the level and method of funding for Idaho's public schools. In the midst of those appeals, the Idaho Supreme Court remanded the case to the district court to determine the narrow issue of whether the Legislature had provided a means to fund facilities that provide a safe environment conducive to learning, pursuant to the thoroughness requirement of the Idaho Constitution, Article IX, § 1. That constitutional provision imposes a "duty [on] the Legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools."

Following a trial, the district court described, among other things, "the many safety concerns of specific school districts, such as structural problems and fire hazards." *ISEEO v. Idaho,* 129 P.3d 1199, 1204 (Id.Sup.Ct. 2005). Evidence showed that "57% of all Idaho school buildings had serious safety concerns." *Id.* at 1205. A 1999 report updating a 1993 assessment of facility safety concluded

that "53 of the buildings needing serious and immediate attention in 1993 had

deteriorated even further." *Id.* Based on this and other evidence, the district court

concluded that the state funding system "is not adequate to meet the constitutional

mandate to establish and maintain a general, uniform, and thorough system of

public, free common schools in a safe environment conducive to learning for

Idaho's poorest school districts."

On appeal, the Idaho Supreme Court affirmed that decision but declined to

impose any remedy, finding that to be the task of the Idaho Legislature:

> We affirm the conclusion of the district court that the current
> funding system is simply not sufficient to carry out the Legislature's
> duty under the constitution. While the Legislature has made laudable
> efforts to address the safety concerns of various school districts, the
> task is not yet complete. The appropriate remedy, however, must be
> fashioned by the Legislature and not this Court. Quite simply,
> Article IX of our constitution means what it says: "[I]t shall be the
> duty of the Legislature of Idaho, to establish and maintain a general,
> uniform and thorough system of public, free common schools."
> Thus, it is the duty of the State, and not this Court or the local school
> districts, to meet this constitutional mandate. . . . . In adopting
> Article IX, the citizens of Idaho placed their trust in the collective
> wisdom, creativity, and expertise of our legislators, and we do the
> same. We are firmly convinced the Legislature will carry out its
> constitutional duties in good faith and in a timely manner. At this
> juncture, we will not remand the case to the district court, but will
> retain jurisdiction to consider future legislative efforts to comply
> with the constitutional mandate to provide a safe environment
> conducive to learning so that we may exercise our constitutional role
> in interpreting the constitution and assuring that its provisions are
> met.

*Id.* at 1209.

Since that decision in 2005, plaintiffs have filed three state court actions along with this suit. In *Joki v Idaho,* 398 P.3d 48 (Id.Sup.Ct. 2017), the plaintiffs initially sued the State and 114 school districts seeking to represent a class consisting of all students currently enrolled in the defendant school districts together with their parents and guardians. Plaintiffs alleged that the State's funding – and specifically the lack of funding that required local districts to impose fees -- violated the Idaho Constitution Article IX, Section I. Later, the plaintiffs narrowed their complaint to seek (1) reimbursement of fees from a single school district (the Meridian District) or the legislature of certain fees imposed by the school district; and (2) a declaratory judgment against the State Defendants that the current system of funding education in Idaho is unconstitutional. The district court dismissed the State and plaintiffs appealed.

In the appeal to the Idaho Supreme Court, the State defendants argued that the claims against them fell squarely within the terms of the Constitutionally Based Educational Claims Act (CBECA), Idaho Code §§ 6-2201–2216. The CBECA authorizes a patron to sue a local school district for failing to provide constitutionally required educational services, but also states that before a patron can sue the State, the patron must first obtain a ruling from the district court that the local school district is not providing the required educational services and is either unwilling or unable to comply. *Id.* at 52. The plaintiffs in *Joki* sued the

State without first obtaining this ruling from the district court, and the State

defendants argued that the CBECA required that they be dismissed. The Idaho

Supreme Court agreed, rejecting plaintiffs' arguments that the CBECA did not

apply and that it violated provisions of the Idaho Constitution. *Id.* at 52-55.

In a separate action filed in state court – *Zeyen v Pocatello/Chubbuck School

District* – the plaintiff sued a single school district seeking to represent a class of

all patrons of that single school district, alleging that the fees charged by the

district were unconstitutional under Idaho's constitution. The district court held

that the CBECA barred recovery for fees improperly paid. When plaintiff tried to

amend his complaint to add a claim for a Due Process violation, the district court

denied the amendment on the ground that it came too late in the litigation.

The plaintiff in *Zeyen* appealed the district court's ruling in August of 2018,

and the appeal is pending at this time. Another action – *Wood v Bonneville School

District* – also challenges fees charged by a single school district. Plaintiffs seek to

represent a class consisting of all patrons of that single school district, and have

challenged the fees as violating both the Idaho Constitution and the U.S.

Constitution (5th and 14th Amendments). That case was filed in November of 2017

and is presently stayed pending a decision by the Idaho Supreme Court in the

*Zeyen* appeal.

The lead plaintiff in that *Zeyen* case then filed the present action in this Court on May 9, 2018. This is a class action challenging fees allegedly charged in contravention of the Idaho Constitution. The Plaintiffs, who have students attending schools in the Pocatello and Bonneville School Districts, seek to proceed as representatives of all students and patrons in the 115 school districts and charter schools in the state of Idaho. Plaintiffs assert a Takings Clause and due process claim against defendants under § 1983, and a declaration that the fees charged by these local school districts are unconstitutional under article IX, § 1 of the Idaho Constitution. That constitutional provision requires the legislature to "establish and maintain a general, uniform and thorough system of public, free common schools." Plaintiffs seek declaratory relief, reimbursement of fees charged for the past six years and certification for both a plaintiff and defendant class.

The defendants have divided into two groups, each represented by separate counsel. Each group has filed a motion to dismiss. Because the motions raise similar issues, the Court will review each issue raised rather than address the motions separately.

## ANALYSIS

### Standing

Defendants argue that the named plaintiffs have only paid fees in two of the 115 local school districts named as defendants and therefore cannot establish

standing to sue those districts in which they never themselves paid fees. Plaintiffs

counter that the Ninth Circuit has found standing under these circumstances in *La

Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973). But *La Mar*

assumed standing existed and analyzed only the class certification issues, so it has

little value here. *See e.g., Jimenez v Progressive*, 2016 WL 5858738 (D.Arizona

2016) (refusing to apply *La Mar* to resolve standing issue in class action context);

*Blyden v Navient Corp.*, 2015 WL 4508069 (C.D. Cal. 2015) (same); *In re Merex

Corporation Securities Litigation*, 2009 WL 10692857 (D.Ore. 2009) (same);

*Cady v Anthem Blue Cross*, 583 F.Supp. 2d 1102 (N.D.Calif. 2008) (same); *Henry

v. Circus*, 223 F.R.D. 541 (D.Nev. 2004) (same).

Pivoting away from *La Mar,* plaintiffs argue that the Court should resolve

the standing issue only after the class certification motion has been filed and

resolved. The Ninth Circuit has held that standing "is a jurisdictional element that

must be satisfied prior to class certification." *Lee v. State of Or.,* 107 F.3d 1382,

1390 (9th Cir. 1997) (quoting *Nelsen v. King County*, 895 F.2d 1248, 1249–50 (9th

Cir. 1990). In both *Lee* and *Nelsen*, the named plaintiffs lacked standing to bring

even their own claims, and by resolving the standing deficiency first, the Circuit

avoided wasting time on the class certification issues.

Yet when the named plaintiffs have standing to pursue their own claims – as

here – the leading treatise on federal practice states that the issue of whether they

have standing to pursue similar but not identical claims of proposed class members should await the class certification stage. *See* Wright & Miller, *Federal Practice & Procedure* § 1785.1 (2d ed. 2005) ("Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."). The view finds support in the Supreme Court decision of *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 612-13 (1997), holding that the issue of class certification is "logically antecedent to" – and therefore should be decided before – standing issues when the named plaintiffs demonstrate their own standing.

Nevertheless, the Ninth Circuit has narrowly interpreted *Amchem,* holding that it only applies to the review of standing in the "specific situation of a mandatory global settlement class." *See Easter v. Am. W. Fin.*, 381 F.3d 948. 962 (9th Cir. 2004). In *Easter,* the plaintiffs filed a proposed class action against (1) lenders who originated usurious loans and (2) successors who purchased the loans. Only a few of the successors held notes of the named plaintiffs, and the Circuit held that (1) standing was properly decided before class certification, and (2) the named plaintiffs lacked standing to sue any successor who did not hold a named plaintiffs' note. *Id.* at 962.

While *Easter* seemed to settle the issue, nine years later the Circuit, citing

*Easter,* states that "we do not need to reach the more difficult chicken-and-egg

question of whether class certification should be decided before standing,"

implying that perhaps *Easter* was not the final word.  *Perez v. Nidek Co., Ltd.,* 711

F.3d 1109, 1113-14 (9th Cir. 2013).  Finally, however, it appears that the Circuit

has resolved this "difficult chicken-and-egg question" in *Melendres v. Arpaio,* 784

F.3d 1254 (9th Cir. 2015).  In *Melendres*, the named plaintiffs claimed to be

victims of racial profiling by Maricopa County Sheriff Joe Arpaio, and sought to

represent a class of Latinos detained during the Sheriff's saturation patrols and

non-saturation patrols.  While recognizing that the named plaintiffs had standing to

bring their own claims, the defendants argued that "no named plaintiff has standing

to represent the claims of unnamed plaintiffs stopped during a non-saturation

patrol."  *Id.* at 1262.  The Circuit rejected that argument, holding that "this

argument raises the question of class certification – i.e., whether the named

plaintiffs are adequate representatives of the claims of the unnamed plaintiffs – not

a question of standing."  *Id.*  The Circuit went on to identify the distinction

between standing and the class certification requirements:

> The difficulty with Defendants' argument is that it conflates
> standing and class certification. Although both concepts "aim to
> measure whether the proper party is before the court to tender the
> issues for litigation . . . [t]hey spring from different sources and
> serve different functions." 1 William B. Rubenstein, *Newberg on
> Class Actions* § 2:6 (5th ed.). Standing is meant to ensure that the

injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate. Class certification, on the other hand, is meant to ensure that named plaintiffs are adequate representatives of the unnamed class . . . . The "class certification approach" . . . "holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Newberg on Class Actions* § 2:6.

*Id.* at 1261-62. After discussing these two approaches, the Circuit in *Melendres* held that, "[w]e adopt the class certification approach." *Id.* at 1262.

In the present case, it is undisputed that the named plaintiffs have standing to bring their own claims. Thus, under *Melendres,* the focus turns from standing to the requirements of Rule 23(a) – especially the requirements of typicality, commonality, and adequacy of representation – issues that will not be ripe for resolution until a motion for class certification is filed and briefed. *Id.* Consequently, the Court will deny those portions of the motions to dismiss based on standing.

**Abstention**

Defendants argue that the Court should abstain pending resolution of the *Zeyen* appeal at the Idaho Supreme Court, as discussed above. If plaintiff prevails in *Zeyen,* the Idaho Supreme Court may hold that the CBECA does authorize reimbursement for fees unconstitutionally imposed. In other words, the CBECA could provide a remedy, resolving the due process claim that the lack of such a remedy was an unconstitutional taking.

**Memorandum Decision & Order – page 10**

A federal court should abstain when it may avoid a constitutional issue by allowing a state court to construe state law. *See Railroad. Comm'n of Texas v. Pullman Co*., 312 U.S. 496 (1941). But abstention should be exercised rarely, giving due respect to a plaintiff's choice of a federal forum for the hearing and decision of his federal constitutional claims. *See Zwickler v. Koota*, 389 U.S. 241 (1967). It is appropriate to abstain under *Pullman* only if each of the following three factors is present:

> (1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open;
> (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy; and
> (3) [the proper resolution of] the possible determinative issue of state law is uncertain.

*Porter v. Jones,* 319 F.3d 483, 492 (9th Cir. 2003). "The absence of any one of these three factors is sufficient to prevent the application of *Pullman* abstention." *Id.*

The first factor is present here – education is a sensitive area of social policy, especially when the issue is the constitutionality of funding under the Idaho Constitution. The second factor is also present – the due process issue will be avoided if the Idaho Supreme Court holds that the CBECA provides a remedy to plaintiffs to recover fees paid in violation of Idaho's Constitution. And finally, the outcome is unclear as Idaho's district courts have reached different conclusions.

*Compare Joki v. Idaho*, CV-OC-2012-17745 Findings of Fact & Conclusions of Law (Nov. 13, 2015) (holding that plaintiffs were entitled to past fees imposed in violation of Idaho Constitution) (reversed on appeal on other grounds), 394 P.3d 48 (Id.Sup.Ct. 2017) *with Zeyen v. Pocatello,* Case No. CV-2016-2175 Memorandum Decision (Feb. 14, 2018) (holding that the CBECA does not allow for individual damages for prior violations of Idaho Constitution).

Because all three factors exist here, the Court will abstain pending resolution of the *Zeyen* case being resolved in the Idaho Supreme Court. The Court has the discretion to stay this case rather than dismiss it, and the Court will exercise its discretion to stay this case pending resolution of *Zeyen. See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 730-31 (1996).

## Conclusion

The defendants argue that the due process claims should be dismissed for various reasons, but the Court will await the ruling in *Zeyen* before resolving those issues. Defendants also argue that this lawsuit is essentially an improperly removed case from state court, but the Court disagrees, finding no authority to support defendants' argument.

The Court will therefore deny the motions to dismiss in large part, but grant that part of the motions that asks the Court to abstain. The Court will stay this litigation pending resolution of *Zeyen.*

# ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motions to dismiss (docket nos. 35, 36 & 45) are GRANTED IN PART AND DENIED IN PART. They are granted to the extent that they ask the Court to abstain and to STAY this litigation pending resolution of the *Zeyen* appeal in the Idaho Supreme Court. They are denied in all other respects.

DATED: January 30, 2019

_____
B. Lynn Winmill
U.S. District Court Judge