UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIKE ZEYEN, et al, <br><br> Plaintiffs, <br><br> v. <br><br> BOISE SCHOOL DISTRICT NO. 1, et al., <br><br> Defendants. | Case No. 1:18-cv-207-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it plaintiffs' motion for class certification and motion for partial summary judgment along with defendants' motions for summary judgment. The Court heard oral argument on the motions and took them under advisement. After further review, and based on the analysis below, the Court will (1) deny defendants' motion for summary judgment; (2) deny the motion for class certification; and (3) deny plaintiffs' motion for partial summary judgment.

## SUMMARY

This is a class action challenging fees charged by school districts in contravention of the Idaho Constitution's requirement that education be free. The plaintiffs, who have students attending schools in the Pocatello and Bonneville School Districts, seek to proceed as class representatives of all patrons – that is, all students and parents – in 115 school districts and charter schools in the state of Idaho. Plaintiffs allege that the fees

charged by these school districts violate Article IX, §1 of the Idaho Constitution, which states as follows:

> The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools.

Plaintiffs argue that certain types of fees imposed by school districts violate this constitutional requirement that education be free and therefore constitute a taking of property without due process in violation of the Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment. Their lawsuit seeks to recover the fees paid and obtain a declaratory judgment that prohibits the imposition of such fees in the future. In the specific motions now before the Court, plaintiffs seek to certify a class of all patrons in the 115 Idaho school districts who have paid such fees, and to obtain a partial summary judgment declaring that the fees for second-half day kindergarten violate the free-education provision of the Idaho Constitution.

The defendants respond by seeking summary judgment dismissing all of plaintiffs' claims. Defendants central argument is that the Idaho Legislature has limited the relief available under the Idaho Constitution's education provision. By passing the Constitutionally Based Educational Claims Act (CBECA), Idaho Code §§ 6-2201–2216, the Idaho Legislature prohibited patrons from seeking reimbursement of fees, defendants argue, requiring that this lawsuit be dismissed.

In the decision below, the Court holds that CBECA's ban on lawsuits to recover fees imposed in violation of the Idaho Constitution essentially nullifies the Takings

Clause and therefore violates the Supremacy Clause of the United States Constitution. With regard to plaintiffs' motion to certify a class, the Court finds that plaintiffs have not sufficiently identified the types of fees they are challenging and hence are not now entitled to a class certification. Finally, the Court denies plaintiffs' motion for partial summary judgment because no named plaintiff has shown they attended kindergarten and paid fees not authorized by the free-education provision of the Idaho Constitution.

## LITIGATION BACKGROUND

This action was preceded by lengthy litigation in the Idaho state courts. Between 1993 and 2005, a series of five appeals were decided by the Idaho Supreme Court challenging the level and method of funding for Idaho's public schools. In the midst of those appeals, the Idaho Supreme Court remanded one of the cases to the district court to determine the narrow issue of whether the Legislature had provided a means to fund facilities that provide a safe environment conducive to learning, pursuant to the thoroughness requirement of the Idaho Constitution, Article IX, § 1. That constitutional provision, quoted in full above, imposes a "duty [on] the Legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools."

Following a trial, the district court described, among other things, "the many safety concerns of specific school districts, such as structural problems and fire hazards." *ISEEO v. Idaho,* 129 P.3d 1199, 1204 (Id.Sup.Ct. 2005). Evidence showed that "57% of all Idaho school buildings had serious safety concerns." *Id.* at 1205. A 1999 report updating a 1993 assessment of facility safety concluded that "53 of the buildings needing

serious and immediate attention in 1993 had deteriorated even further." *Id.* Based on this and other evidence, the district court concluded that the state funding system "is not adequate to meet the constitutional mandate to establish and maintain a general, uniform, and thorough system of public, free common schools in a safe environment conducive to learning for Idaho's poorest school districts." *Id.*

On appeal, the Idaho Supreme Court affirmed that decision but declined to impose any remedy, finding that to be the task of the Idaho Legislature:

> We affirm the conclusion of the district court that the current funding system is simply not sufficient to carry out the Legislature's duty under the constitution. While the Legislature has made laudable efforts to address the safety concerns of various school districts, the task is not yet complete. The appropriate remedy, however, must be fashioned by the Legislature and not this Court. Quite simply, Article IX of our constitution means what it says: "[I]t shall be the duty of the Legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools." Thus, it is the duty of the State, and not this Court or the local school districts, to meet this constitutional mandate. . . . . In adopting Article IX, the citizens of Idaho placed their trust in the collective wisdom, creativity, and expertise of our legislators, and we do the same. We are firmly convinced the Legislature will carry out its constitutional duties in good faith and in a timely manner. At this juncture, we will not remand the case to the district court, but will retain jurisdiction to consider future legislative efforts to comply with the constitutional mandate to provide a safe environment conducive to learning so that we may exercise our constitutional role in interpreting the constitution and assuring that its provisions are met.

*Id.* at 1209. Since that decision in 2005, plaintiffs have filed three state court actions along with this suit. In *Joki v Idaho,* 398 P.3d 48 (Id.Sup.Ct. 2017), the plaintiffs initially sued the State and 114 school districts seeking to represent a class consisting of all students currently enrolled in the defendant school districts together with their parents and guardians. Plaintiffs alleged that the Idaho Legislature's inadequate funding of

education, requiring school districts to impose fees, violated the free-education provision of the Idaho Constitution.  Later, plaintiffs narrowed their complaint to seek (1) reimbursement of fees imposed by a single school district; and (2) a declaratory judgment against the State Defendants that the current system of funding education in Idaho is unconstitutional.  The district court dismissed the State and plaintiffs appealed.

In the appeal to the Idaho Supreme Court, the State defendants argued that the claims against them fell squarely within the terms of CBECA.  *See* Idaho Code §§ 6-2201–2216.  CBECA authorizes a patron to sue a local school district for failing to provide constitutionally required educational services, but also states that before a patron can sue the State, the patron must first obtain a ruling from a district court that the local school district is not providing the required educational services and is either unwilling or unable to comply.  *Id.* at 52.  The plaintiffs in *Joki* sued the State without first obtaining this ruling from a district court, and the State defendants argued that CBECA required that they be dismissed.  The Idaho Supreme Court agreed, rejecting plaintiffs' arguments that CBECA did not apply and that it violated provisions of the Idaho Constitution.  *Id.* at 52-55.

In a separate action filed in state court – *Zeyen v Pocatello/Chubbuck School District* – the plaintiff sued a single school district seeking to represent a class of all patrons of that single school district, alleging that the fees charged by the district were unconstitutional under Idaho's constitution.  The district court held that CBECA barred recovery for fees improperly paid.  When plaintiff tried to amend his complaint to add a

claim under the Takings Clause, the district court denied the amendment on the ground that it came too late in the litigation.

The plaintiff in *Zeyen* appealed the district court's ruling to the Idaho Supreme Court and also filed the present action in this Court.  This case is styled as a class action challenging fees allegedly charged in contravention of the Idaho Constitution. The plaintiffs, who have students attending schools in the Pocatello and Bonneville School Districts, seek to proceed as representatives of all students and patrons in 115 school districts and charter schools in the state of Idaho.  Plaintiffs assert a Takings Clause and due process claim against defendants under 42 U.S.C. §1983, and seek declaratory relief, reimbursement of fees charged for the past six years and certification for a plaintiff class.

Plaintiffs originally sued all 155 or so school districts in the State.  But plaintiffs offered to dismiss any school district that would certify that they were not charging fees. About 40 school districts provided that certification and plaintiffs dismissed them from this action.

The remaining school district defendants divided themselves into two groups, each represented by separate counsel.  They filed motions to dismiss arguing that the named plaintiffs lacked standing to pursue claims other than their own.  The Court rejected that argument, holding that (1) the named plaintiffs clearly had standing to bring their own claims; and (2) whether the named plaintiffs could proceed on behalf of the proposed class would depend on an analysis of the Rule 23 requirements for class actions, including the requirements of typicality and commonality.

The Court did grant defendants' motions to the extent they asked the Court to abstain from proceeding with this litigation until the Idaho Supreme Court had decided the *Zeyen* appeal.  The Court reasoned that the taking/due process issues would be avoided if Zeyen ultimately held that CBECA provides a remedy to plaintiffs to recover fees paid in violation of Idaho's Constitution.

A short time later the Idaho Supreme Court issued its decision on the *Zeyen* appeal, holding that CBECA does not provide a remedy for reimbursement of fees but only for present and prospective injunctive and declaratory relief.  *See Zeyen v. Pocatello/Chubbuck Sch. Dist.,* 451 P.3d 25 (Id. Sup. Ct. 2019).[1]  With the issuance of that decision, the justification for the stay had ended; the Court lifted the stay and set a hearing date for argument on the motions now before the Court.  *See Memorandum Decision (Dkt. No. 65).*

The plaintiffs have filed a motion to certify a class of plaintiffs and a motion for partial summary judgment that the fees charged for second-session kindergarten violate the Takings Clause.  The defendant school districts – divided into two groups, each represented by separate counsel – have each filed motions for summary judgment seeking to dismiss all claims.

The Court will resolve first the defendants' motions for summary judgment.

---

[1] Another action – *Wood v Bonneville School District* – also challenges fees charged by a single school district.  Plaintiffs seek to represent a class consisting of all patrons of that single school district, and have challenged the fees as violating both the Idaho Constitution and the U.S. Constitution (5th and 14th Amendments).

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants seek summary judgment primarily on the ground that the Idaho Legislature has limited the remedies available under the free-education provision of the Idaho Constitution and banned lawsuits like the one Plaintiffs have filed.  Plaintiffs respond that the Idaho Legislature lacks the authority to ban lawsuits under the Takings Clause of the United States Constitution.

The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation.  *Palazzolo v. Rhode Island,* 533 U.S. 606, 617 (2001). The purpose of the Takings Clause "is to prevent the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Id.* at 618.  The plaintiffs fit their claim within this language of *Palazzolo* by arguing that the Idaho Legislature's failure to adequately fund education forced them, as families of students, to pay for fees that were required to be borne by all Idahoans, according to the Idaho Constitution.

Cases brought under the Takings Clause typically involve the taking of real property rights.  Here, the Plaintiffs' define their property right as a right to free education contained in the Idaho Constitution.  A right created by a state constitution can constitute a property right:

> [A] person [to have a property right] must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it . . . .  It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be

arbitrarily undermined. . . . Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Here, plaintiffs have an independent source for their property right in the free education provision of the Idaho Constitution. The defendants respond that the Idaho Constitution creates only a public right, defining the duty of the Legislature, not an individual right to a free education. However, both the Idaho Legislature and the Idaho Supreme Court have rejected that argument. The Idaho Legislature obviously thought that the free-education provision of the Idaho Constitution granted individual rights because they passed CBECA to limit, or in some cases as discussed below, to nullify those rights. The Idaho Supreme Court likewise disagrees with defendants as seen in *Paulson v. Minidoka County Sch. Dist.,* 463 P.2d 935, 939 (Id.Sup.Ct. 1970). There, two individuals who refused to pay school district fees were denied transcripts when they graduated from high school. They filed suit alleging that they were entitled to their transcripts because the fees violated the free-education provision of the Idaho Constitution. If the defendants in the present case are correct that the Idaho Constitution creates no individual rights, the Idaho Supreme Court in *Paulson* should have dismissed that case with a single sentence. Instead, the Court went to some effort to draw a line between proper and improper fees, and upheld the lower court's decision finding that a portion of the fees charged violated the free-education provision and requiring the school district to provide transcripts to the plaintiffs. In other words, individuals were granted

individual relief under the free-education provision of the Idaho Constitution, in direct contravention to defendants' argument that no such rights exist.

Defendants argue next that even if individual rights were granted, CBECA limits those rights and forbids lawsuits like this one. As interpreted by *Zeyen,* CBECA allows patrons to sue for present and prospective injunctive and declaratory relief but prohibits lawsuits (1) seeking reimbursement of fees paid; (2) seeking a declaratory judgment that past practices were improper; or (3) seeking redress by anyone who was not a current or prospective student or their families. *Zeyen v. Pocatello/Chubbuck Sch. Dist.,* 451 P.3d 25 (Id. Sup. Ct. 2019); *see also* Idaho Code § 6-2205.

Plaintiffs are seeking reimbursement for past fees; CBECA, as interpreted by *Zeyen,* clearly forbids such an action. Thus, CBECA requires that this action be dismissed unless the statute's grasp exceeds its allowable reach. While the Idaho Legislature has the authority to "provide for, regulate, control and alter the public schools of the state," *see Andrus v Hill*, 73 Idaho 199 (1952), the statute goes beyond that authority – it bans lawsuits seeking reimbursement for fees imposed in violation of the Idaho Constitution, effectively prohibiting a takings claim and nullifying the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution. While state legislatures have authority to "condition . . . property right[s] on the performance of reasonable conditions," *see Texaco v. Short*, 454 U.S. 516, 525-526 (1982), no authority allows them to nullify provisions of the United States Constitution. *See U.S. Const. Art. VI cl. 2* (stating that "[t]his Constitution . . .shall be the supreme Law of the Land"); *see also, Hill-Vu Mobile Home Park v. City of Pocatello*, 162 Idaho 588, 594 (Id.Sup.Ct.

2017) (holding that "[a] statute cannot limit the right to recover for the taking of property in violation of the Constitution").

Defendants respond that CBECA has not nullified the Takings Clause but instead "is effectively a statute of limitations requiring a patron to file his or her action in time to effectuate the system's prospective compliance with the Education Article. . . . In essence, CBECA allows for correction of the system and thereby prevents the charging of improper fees, however, if a patron waits and requests a refund later, they are too late." *See Reply Brief (Dkt. No. 78)* at p. 7-8.  Defendants then cite *Block v. North Dakota,* 461 U.S. 273, 292 (1983) for its holding that losing the right to reimbursement for failing to comply with a statute of limitations does not constitute a taking under the Takings Clause.

However, CBECA is quite different from a statute of limitations.  First, CBECA contains no limitations period and no language common to statutes of limitations generally.  Second, the statute's remedies provision, § 6-2209, sets forth the complete list of remedies available, including injunctions and levy orders, but does not include the recovery of fees.  That means that even if a lawsuit was filed the same day as the challenged fee was paid, CBECA has no provision for reimbursement of that fee.  The bottom line is that CBECA is an outright ban on the right to recover fees, and cannot be deemed a statute of limitations.  Hence, *Block* is inapplicable.

In a related argument, defendants claim plaintiffs fail to meet CBECA's standing provisions.  However, because this lawsuit is based on the Takings Clause, not CBECA,

plaintiffs need not comply with CBECA's standing provisions.  This portion of defendants' motions for summary judgment will likewise be denied.

Defendants argue next that any fees charged by school districts cannot be deemed a taking in violation of the Takings Clause, citing a statement in *Koonz v. St. John's Water Management Dist*., 570 U.S. 595 (2013) that "[i]t is beyond dispute that taxes and user fees are not 'takings.'"  *Id.* at 615.  But the Idaho Supreme Court in *Paulson* (discussed above) held that the free-education provision of the Idaho Constitution forbids certain types of fees that cannot be described as user fees or taxes.  *Paulson* presented a challenge – prior to the passage of CBECA – to various types of school district fees.  The Idaho Supreme Court held that some charges were proper while others exceeded the constitutional requirement that education be free.  More specifically, the court upheld charges that could be described as user fees, that is, fees for social and extra-curricular activities and items that are "not necessary elements of a high school career" and that are "paid by students who wish to exercise an option to participate in them."  *Id.* at 939.  But other fees were "imposed generally on all students whether they participate in extra-curricular activities or not, becom[ing] a charge on attendance at the school. Such a charge contravenes the constitutional mandate that the school be free."  *Id.*

Even if *Koontz* bans actions for user fees and taxes, *Paulson* makes it clear that neither is involved here.  First, *Paulson* does not permit reimbursement of user fees but does permit recovery of other types of fees that plaintiffs seek here.  Second, the fees sought here cannot be deemed "taxes" if found to be unconstitutional under *Paulson's* analysis.  For these reasons, *Koonz* is inapplicable.

**Memorandum Decision & Order – page** 12

Defendants argue next that plaintiffs have failed to identify the due process to which they were entitled, and that even if due process was lacking, plaintiffs obtained just compensation because they were provided with educational benefits in exchange for the fees they challenge.  But plaintiffs' claim under the Takings Clause requires no showing of a due process violation.  *Burnham v. City of Sedro-Wooly,* 2005 WL 1719901 (holding that "the due process clause and takings clause provide distinct protections to landowners");  *Knick v. Township of Scott,* 139 S.Ct. 2162, 2182 (2019) (Kagan J. in dissent) (stating that "the Takings Clause violation has two necessary elements. First, the government must take the property. Second, it must deny the property owner just compensation").  To the degree that plaintiffs have also made claims under the Due Process Clauses of the Fifth and Fourteenth Amendments, they have identified the lack of due process:  They have no recourse whatsoever under Idaho law to obtain reimbursement of fees they paid.  And their receipt of educational benefits, far from being fatal to their claim, is actually part and parcel of it – plaintiffs allege that they received educational benefits *at a cost* in violation of the Idaho Constitution.  It is the cost, not the benefit, that is the crux of this lawsuit.  Thus, summary judgment cannot be based on the mere fact that Plaintiffs received educational benefits.

For the reasons expressed above, the Court will deny defendants' motion for summary judgment.

## PLAINTIFFS' MOTION TO CERTIFY CLASS

Plaintiffs seek certification of a class of all students enrolled in kindergarten through 12th grade in the public and charter schools of Idaho, and their parents and/or

guardians, commencing with the school year 2014-2015, and continuing thereafter, who have been or will be subjected to assessment for and/or paid fees that violate the Idaho Constitution.  Defendants respond that plaintiffs have failed to satisfy the requirements of Rule 23 for a class certification.

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend,* 569 U.S. 27 (2013).  To come within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23.  *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551–2552 (2011).  The Rule "does not set forth a mere pleading standard."  *Id.*  Rather, a party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims, and adequacy of representation, as required by Rule 23(a), but must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).  *Id.*

The Supreme Court has emphasized that it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Comcast,* 569 U.S. at 33-34.  Such an analysis "will frequently entail overlap with the merits of the plaintiff's underlying claim."  *Id.* at 34.  That is so because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Id.*

The Court will examine each of the requirements under Rule 23(a) and (b) to determine if plaintiffs' motion to certify class should be granted.

**Rule 23(a)(1)**

Plaintiffs' proposed class would contain thousands of individuals and therefore clearly meets the numerosity requirement of Rule 23(a)(1).

**Rule 23(a)(2) – Legal Standards for Commonality**

To show commonality, plaintiffs must demonstrate that there are questions of fact and law that are common to the class. *See* Fed.R.Civ.P. 23(a)(2). "[C]ommonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke," and the "plaintiff must demonstrate the capacity of class wide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350). For example, "[c]ommonality is generally satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Benitez v. W. Milling, LLC*, 2020 WL 309200, at *5 (E.D. Cal. Jan. 21, 2020).

The rule does not require all questions of law or fact to be common to every single class member and "[d]issimilarities among class members do not [necessarily] impede the generation of common answers to those questions[.]" *Parsons v. Ryan*, 754 F.3d 657, 684 (9th Cir. 2014). However, more is required than simply raising a common question. *See Wal-Mart*, 564 U.S. at 349. In *Wal-Mart*, the plaintiffs were female employees of

Wal-Mart alleging that they were passed over for promotions that were instead awarded to male employees in violation of Title VII.  The proposed class contained over a million plaintiffs.  The Supreme Court held that the lack of any system-wide practice of discrimination by Wal-Mart meant that a class proceeding would not generate common answers to common questions:

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways – by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*See Wal-Mart*, 564 U.S. at 350.

## Rule 23(a)(3) & (4) – Legal Standards for Typicality & Adequacy of Representation

The commonality and typicality requirements of Rule 23(a) tend to merge. *General Telephone v Falcon,* 457 U.S. 147, 157 at n. 13 (1982).  "Both serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement," which ensures that the named plaintiffs will zealously advocate for the rights of the unnamed class members.  *Id.*

**Memorandum Decision & Order – page 16**

**Analysis of 23(a) Requirements**

In the present case, the commonality, typicality, and adequacy of representation requirements all come together to form a significant hurdle for plaintiffs. The first and foremost obstacle to finding these three requirements satisfied is the fact that plaintiffs have not specifically identified the categories of fees they seek to recover. They claim to be seeking a narrow category of fees "for classes for which credit is granted toward graduation or which otherwise constitute a charge on school attendance" in violation of the Idaho Constitution." *See Plaintiffs' Brief (Dkt. No. 67)* at p. 3. They hint that the fees they challenge will fall into "about" four categories, but do not describe those categories. *Id.* at p. 5.[2] While recognizing that there are differences between the various fees they challenge, plaintiffs argue that "the differences between the types of fees charged are incidental and inconsequential, and can be handled at the 'claims administration phase' based on each family providing a claim to the Claims Administrator under a form with terms and conditions established by the Court." *Id.* at p. 4.

However, the Court has no way of knowing whether the differences between the four categories (or more) of fees are "incidental and inconsequential" when plaintiffs have not described those categories. This is no small matter under *Wal-Mart.* There, the common question presented – whether Wal-Mart violated Title VII by ignoring women

---

[2] Plaintiffs also provide a vague description of the fees they challenge in their Amended Complaint as follows: "The Court will not be asked by Plaintiffs to concern itself with detailed consideration of each fee being assessed, but rather restrict its ruling to the categories thereof pursuant to a protocol/grid and claim form to be developed by the parties and approved by the Court." *See Amended Complaint (Dkt. No. 21)* at p. 12 n.2. No such "protocol grid and claim form" has been proposed by plaintiffs.

employees for promotion – was not in fact a common question because Title VII could be violated in several ways and the various ways that the plaintiffs were denied promotion threatened to drive the litigation into a myriad of individual determinations.

Similarly, if the Court must examine various types of fees to determine whether they violate the Idaho Constitution, this lawsuit could devolve into a myriad of individual determinations, exactly the situation faced by *Wal-Mart.* To be more specific, the *Paulson* case, discussed at length above, held that certain types of fees are proper while other types are unconstitutional.  The undoubtedly wide variation of fees charged by school districts throughout Idaho will require significant sifting under *Paulson* to distinguish between the proper and improper fees.  While the plaintiffs have stated that they intend to narrow down the challenged fees to fit into "about" four categories, the Court will need a precise definition of those categories before it can determine whether commonality is satisfied under *Wal-Mart*.  Plaintiffs have not given the Court enough information to find that the differences between the various fees being challenged are "incidental and inconsequential" as alleged by plaintiffs.

A separate problem also touches on all three requirements of commonality, typicality, and adequacy of representation.  What does a named plaintiff paying fees in the Pocatello School District have in common with a proposed unnamed class member paying different fees in, say, a Moscow School District?  Once reimbursed for his Pocatello fees, the named plaintiff may have little incentive to zealously advocate for someone else to recover their fees from the Moscow School District.  This dilemma could be addressed in several ways.  The class definition could be narrowed, named plaintiffs

could be added in each school district being sued, or the types of fees challenged could be identified so that there were similarities across districts – or some combination thereof. Even these solutions may not be enough and the Court cannot evaluate them in the abstract before being given specific proposals by plaintiffs. The Court merely mentions some possibilities to clarify the weakness in this motion for class certification.

### Rule 23(b)(3)

The plaintiffs must satisfy the requirements of Rule 23(b)(3) because *Wal-Mart* ruled out proceeding under subsections (b)(1) & (b)(2) for plaintiffs seeking a monetary recovery in a case like this. *Wal-Mart,* 131 S.Ct. at 2557 (holding that "individualized monetary claims belong in Rule 23(b)(3)"). Rule 23(b)(3) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members." *Id.* This requirement is not met when "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.*

If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a). *Id.* Rule 23(b)(3) is an "adventuresome innovation" designed for situations "in which class-action treatment is not as clearly called for." *Id.* at 2558. That explains Congress's addition of procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out), and the court's duty to take a "close look" at whether common questions predominate over individual ones. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

The class proposed by plaintiffs seeks to recover a variety of undefined categories of fees charged by 115 different school districts over the last six years.  Under this proposal, questions of individual fee reimbursement will inevitably overwhelm questions common to the class.  The plaintiffs must substantially narrow this case to satisfy Rule 23(b)(3).

## Conclusion – Motion to Certify Class

The definition of the proposed class does not meet the requirements of Rule 23(a) and (b)(3) because it fails to specify the categories of fees sought, and fails to show a sufficient similarity of interest between named plaintiffs and proposed class members, all as discussed above.  The Court will accordingly deny the motion to certify class filed by plaintiffs.

In the *Wal-Mart* case, the Supreme Court remanded the case to the District Court for further proceedings, and the District Court allowed plaintiffs another attempt to satisfying Rule 23.  *See Dukes v Wal-Mart,* 964 F.Supp. 2d 1115 (N.D. CA. Aug. 2, 2013).

The Court will likewise give plaintiffs one more opportunity to narrow this litigation to satisfy Rule 23.  Counsel shall contact the Clerk Jamie Gearhart upon receiving this decision to schedule a telephone hearing to discuss logistics with the Court's Law Clerk such as time limits for the filing of another motion to certify along with briefing page limits and any other matters.

Finally, the plaintiffs filed a motion to strike defendants' response briefs to the motion to certify.  The defendants filed a motion for extension that sought a lengthy

extension that the Court denied but the Court did allow them to file the response brief that had already been filed by that point on June 5, 2020. *See Order (Dkt. No. 65)* at p. 8. Accordingly, the Court will deny plaintiffs' motion to strike that response brief.

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

In their motion for partial summary judgment, plaintiffs seek a declaratory judgment that, "[t]he Idaho Constitution prohibits Idaho School Districts and Charter Schools from charging fees for students to attend Second-Session Kindergarten; and if any defendants collected any such fees, they must refund them to qualified plaintiffs who apply for a refund."

In support of their motion, plaintiffs identified 23 elementary schools in the West Ada County School District that assessed and collected a total of $8,712,170.12 in tuition fees for second-half-day kindergarten from school years 2014-2015 through 2019-2020. *See Huntley Declaration (Dkt. No. 75-1).* In that District, the second-half-day kindergarten is designed as "an enriched and extended kindergarten curriculum, focused on providing students with expanded language arts experiences through drama, speaking, writing and reading. It will provide enrichment in math, social studies, science and general knowledge." *See Exhibit 3 (Dkt. No. 69-2).* The tuition for this second-half-day kindergarten charged by the West Ada County School District is $290 per month for nine months. *Id.* These fees, Plaintiffs argue, violate the Idaho Constitution's right to a "uniform and thorough system of public free common schools," *see Idaho Constitution Art. IX, sec. 1,* and therefore constitute a unconstitutional taking in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

**Memorandum Decision & Order – page** 21

Plaintiffs argue that the Court should presume that all 115 of the school districts remaining in this lawsuit charge fees for second-half-day kindergarten because plaintiffs' counsel offered to dismiss any school that certified it did not charge such fees, and the remaining schools failed to file any such certification.  Certainly, there are good reasons for establishing evidentiary presumptions generally.  *See Rule of Evidence 301.*  But why here?  There may be several legitimate reasons for a school to ignore plaintiffs' offer that have nothing to do with whether they actually charge fees.  For example, the school district may have feared unanticipated legal consequences that a certification might cause, or it simply did not want to negotiate in any manner with opposing counsel.  Ignoring plaintiffs' offer is quite a different thing from admitting to charging fees and so the Court will decline the invitation to establish an evidentiary presumption.

Idaho does not require a school district to offer kindergarten.  *See Idaho Code § 33-208* (stating that "[i]t shall not be compulsory for individual school districts to establish a kindergarten program; and it shall not be mandatory for a child who is eligible by age for attendance to enroll in an established public kindergarten").  But the Legislature through a series of statutes has authorized the individual school districts to determine whether they want to offer kindergarten for 5-year-olds, and the vast majority of districts in Idaho do offer at least a tuition-free first-half-day kindergarten.

Plaintiffs are not arguing that all school districts must offer second-half-day kindergarten.  Their argument is that if a school district decides to offer second-half-day kindergarten, it cannot charge tuition but must offer it as free to patrons.

To support this argument, plaintiffs cite a decision by Idaho District Court Judge Greenwood in *Joki v. State of Idaho CV OC 2012-17745 (Nov. 16, 2015).* A plaintiff in that case was a mother of two kindergarteners who sought reimbursement for fees of $45. But the mother never appeared at trial, and the fees were paid by the girls' grandfather who was a plaintiff in the suit, but was neither a parent nor a guardian of the girls. Judge Greenwood held that the mother and grandfather had no standing to recover the fees, and he dismissed their claims. Judge Greenwood did go on to state that if the appellate court reversed his decision that the grandfather had no standing that he would rule that the Meridian School District, having established a kindergarten program, was required to offer it for free to patrons. *Id.* at p. 8.

There is no evidence in the present case that the named plaintiffs have ever been enrolled in second-half-day kindergarten or paid any fees for that program. The named plaintiffs are all at ages where they would have finished kindergarten many years ago. The statute of limitations for actions brought under 42 U.S.C. §1983 are governed by the forum state's statute of limitations for personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985), *modified by statute as recognized in North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 n. 1 (1995). In *Wilson,* the Supreme Court wrestled with the confusion caused by federal courts straining to determine a limitations period for federal statutes like §1983 that contained no express limitations period. Prior to *Wilson,* the courts had borrowed limitations periods from analogous state laws, creating a bewildering body of caselaw along with a haphazard patchwork quilt of limitations periods – courts were applying a wide variety of "analogous" state limitations periods

depending on the claim underlying the § 1983 action. *Wilson* decided to cut the knot and borrow from a single source – a state's limitations period for personal injury actions – no matter what claim was underlying the § 1983 action.[3]  Thus, the Court must apply Idaho's two-year limitations period for personal injury actions, *see* Idaho Code § 5-219(4), instead of the limitations period urged by the plaintiffs set forth in Idaho's inverse condemnation statute.

If the named plaintiffs even attended kindergarten and paid fees – an assumption without any support in the record – they have waited well past the two year statute of limitations to bring this action.  Accordingly, their motion for summary judgment must be denied.

### Conclusion – All Pending Motions

The Court will therefore deny (1) defendants' motion for summary judgment; (2) plaintiffs' motion to certify class; and (3) plaintiffs' motion for partial summary judgment.  With regard to the motion to certify, the Court will give plaintiffs one more opportunity to file a motion to certify after specifying the types of fees the class is seeking to recover, as discussed fully above.

### ORDER

In accordance with the Memorandum Decision above,

---

[3] Congress later modified *Wilson* by passing 28 U.S.C. § 1658 that effectively supplied a 4-year statute of limitations for any federal statute passed after December 1, 1990 without its own limitations period.  That statutory modification is not relevant here.

NOW THEREFORE IT IS HEREBY ORDERED that the defendants' motions for summary judgment (docket nos. 68 & 72) are DENIED

IT IS FURTHER ORDERED that the plaintiffs' motion to certify class (docket no. 50) is DENIED.  Plaintiffs shall be allowed one more attempt to file a motion to certify that addresses the concerns set forth above.  Counsel are directed to contact the Court's Clerk Jamie Gearhart (jamie_gearhart@id.uscourts.gov) to schedule a conference with the Law Clerk to set a schedule for the filing of that motion and any logistical issues.

IT IS FURTHER ORDERED that the plaintiffs' motion for partial summary judgment (docket no. 69) is DENIED.

IT IS FURTHER ORDERED that plaintiffs' motion to strike (docket no. 66) is DENIED.

DATED: February 26, 2021

B. Lynn Winmill
U.S. District Court Judge

**Memorandum Decision & Order – page** 25