IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIKE ZEYEN, et al., | Case No.  1:18-cv-207-RCT |
| Plaintiffs, | **ORDER DENYING RENEWED MOTION FOR CLASS CERTIFICATION** |
| v. | |
| BOISE DISTRICT #1, et al., | |
| Defendants. | |

Before the Court is Plaintiffs' renewed motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Dkt. 134.  The Defendants oppose class certification, arguing that Plaintiffs are unable to establish commonality, typicality, or adequacy of representation.  Having considered the parties' briefing and oral argument, the Court DENIES Plaintiffs' renewed motion for class certification with prejudice.

I

Plaintiffs brought this action under 42 U.S.C. § 1983, seeking declaratory relief, monetary relief, and class certification to litigate on behalf of the proposed class of patrons of public school districts and charter schools in the State of Idaho who have paid school fees allegedly assessed by Defendants.  Relying on the Idaho Supreme Court's decision in *Paulson v. Minidoka County School District No. 331*,

463 P.2d 935 (Idaho 1970), Plaintiffs contend that certain categories of the fees assessed by Defendants have been charged in violation of the State of Idaho's constitutional mandate that the State provide "free common schools," Idaho Const., art. IX, sec. 1,[1] and therefore such fees constitute a violation of the Takings Clause of the Fifth Amendment of the United States Constitution, applied to the States by the Fourteenth Amendment.  Dkt. 134-1.  This long-running dispute has spanned decades and a number of judicial fora, *see* Dkts. 48, 65, 81, and the parties' familiarity with these prior proceedings is assumed.  The Court therefore limits its discussion to those facts relevant to the disposition of Plaintiffs' motion to certify the proposed class.

A

Plaintiffs first moved for class certification on November 13, 2019.  Dkt. 50.  The case was subsequently stayed pending the results of related actions filed in Boise's Ada County District Court, and on April 4, 2020, Plaintiffs moved for entry of an order certifying the class, or, alternatively, requested a hearing date on their motion.  Dkt. 58.  The Court (Hon. B. Lynn Winmill, presiding) denied the motion for class certification at that stage of the litigation but granted the request for a

---

[1] The constitutional provision states in full:  "The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools."  *Id.*

hearing date and lifted the stay.  Dkt. 65.  Following oral argument and consideration of the parties' filings, the Court denied, without prejudice, the motion for class certification of all students enrolled in kindergarten through 12th grade in public and charter schools in Idaho, and their parents and/or guardians, since school year 2014–2015.  Dkt. 81.[2]

In denying the motion, Judge Winmill previously found that "the definition of the proposed class does not meet the requirements of Rule 23(a) and (b)(3) because it fails to specify the categories of fees sought, and fails to show a sufficient similarity of interest between named plaintiffs and proposed class members."  Dkt. 81 at 20.  Finding guidance from the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Court concluded that, as alleged, evaluation of the constitutionality of the various types of fees assessed by schools in Idaho (numbering in the thousands)[3] threatened to "devolve into a myriad of individual determinations"—in contravention of the Supreme Court's admonitions.  Dkt. 81 at 18.  Moreover, the Court expressed concern about adequacy of representation,

---

[2] The Court has since established that the applicable statute of limitations precludes recovery of any fees assessed prior to May 9, 2016.  *See* Dkt. 135.

[3] Plaintiffs do not indicate how many fees have been assessed statewide that they seek to challenge.  However, exhibits to the expert report submitted by Plaintiffs indicate that each of the named school districts assessed dozens of fees and that one school alone may offer upward of one hundred courses with potential fees. *See* Dkt. 134-4–7.

questioning what a student in, say, the Pocatello School District in the southeast corner of Idaho might have in common with, and what incentives that student would have to litigate on behalf of, an unnamed class member paying different fees in the Moscow School District in the northwest Idaho Panhandle.  Dkt. 81 at 18.  However, based on the reasoning of *Dukes*, the Court provided Plaintiffs with an additional opportunity to restructure their litigation in order to satisfy the requirements of Rule 23 and cure the noted deficiencies.  Dkt. 81 at 20.

B

Plaintiffs amended their complaint and subsequently filed a renewed motion for class certification on November 16, 2021.  Dkt. 134.  In support of their renewed motion, Plaintiffs included the expert reports and accompanying materials of Doctors Russell Joki and Robert Ranells.  *See* Dkts. 134-3–9.  Defendants opposed the renewed motion and additionally moved to strike both expert reports.  *See* Dkts. 144, 146.   Adhering to established Ninth Circuit precedent, the Court (the undersigned presiding) denied Defendants' motions to strike the expert reports at the class certification stage but indicated that it would consider the arguments set forth in Defendants' motions when determining what weight, if any, to ascribe to the expert reports when evaluating Plaintiffs' renewed motion for class certification. S*ee Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018); Dkt. 173.

On the merits of class certification, Plaintiffs argue they have now satisfied

the requirements of Rule 23 by identifying four categories of impermissible fees which have allegedly been assessed in violation of the Idaho Constitution:  Category 1 ("Fees associated with normal academic curriculum offerings with credit toward graduation"); Category 2 ("Fees associated with co-curricular (i.e., in addition to the normal course of study) offerings with credit, often including a performance"); Category 3 ("Fees associated with educational activities for which separate credits are not offered but which bear the imprimatur of the school and which are 'part of the entire educational product,' including but not limited to field trips, school clubs, and STEM study groups"); Category 4 ("Fees generally imposed on all students whether they participate in extra-curricular activities or not, such as registration fees, textbook fees, computer fees, locker fees, or parking lot fees").  These proposed categories of fees are not used by the schools, but rather are the product of Plaintiffs' experts who have examined the *Paulson* decision and placed items in each category based on an undisclosed methodology developed by Dr. Joki.  Plaintiffs' theory is that these four categories of fees are unconstitutional to assess, and the fees charged each year can be grouped into one of these four categories.

The fees assessed vary between school districts and even among schools within districts, resulting in thousands of different fees.  *See* Dkt. 134-4.  Plaintiffs do not argue there is any commonality between the fees other than that they were allegedly unconstitutionally assessed by the defendant school districts and charter

schools; nor does the Court perceive any.

Having identified these groups of fees, Plaintiffs rely on their expert, Dr. Joki,[4] to review the fees levied by three named defendant School Districts—Bonneville, Pocatello, and West Ada—and to classify the fees students allegedly paid according to the expert's proposed categories. Dr. Joki's report purports to have determined which fees are constitutional under the Idaho Constitution by reference to the proposed categories. Dr. Joki does not explain how he determined which fees belong in which category, nor how he made the calculations, and provides the Court only with a sum of what he calculates the total value of the unconstitutional fees to be: "Based on my findings, above, I believe Bonneville, Pocatello, and West Ada school districts charged and collected, at minimum, the unconstitutional fees during fiscal years 2012–2018" of $11,467,091, $8,056,486, and $4,854,370, respectively. Dkt. 143-3 ¶ 121. According to Plaintiffs, the "unrefuted expert report of Dr. Joki establishes that such unconstitutional fees have been levied by each of the three

---

[4] The Court notes that Dr. Joki served as a named party and proposed class representative in prior litigation seeking to challenge the statewide system of funding and the constitutionality of fees charged to students in public schools of the State. *See Joki v. State*, No. CV OC 2012 17745 (Idaho Dist. Ct. Nov. 16, 2015). Whether that case is now closed or not, Dr. Joki does not present as the typical disinterested expert witness opining on behalf of the putative class. There is no evidence that Plaintiffs proffer to establish that the methodology of the "Joki test" is accepted within the relevant educational expert community. Nor is there any evidence that the methodology has been peer reviewed. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148–49 (1999).

school districts involved." Dkt. 134-1.

Following oral argument, at which the Court attempted to probe for answers to its concerns regarding the scope and management of the litigation, and the proposed method of assessing constitutionality and damages, Plaintiffs filed what they referred to as a Notice of Withdrawal of Category 3 & 4 Refund Claims. Dkt. 180. With this filing, Plaintiffs abandoned their claim to fees falling into their third and fourth proposed categories, to pursue only the fees they self-designate as curricular and co-curricular—Category 1 and Category 2.

## II

Plaintiffs base their claims on the Idaho Supreme Court's decision in *Paulson*, which held that the defendant school district administrators "failed to provide 'free common schools'" as mandated by the Idaho Constitution when "they made access to the official reports of the students' [transcript] records contingent on [payment of] the $25.00 fee charged" to students attending the high school. 463 P.2d at 939. There, the Minidoka County School District had assessed each student attending high school a fee, itemized as $12.50 for textbook fees and $12.50 for school activity fees. *Id.* at 936. "The school would not accept partial payment allocated to any one particular item, but insisted that the fees be paid in their entirety," and failure to pay resulted in the school's refusal to "furnish a transcript of courses studied and grades achieved." *Id.*

The Idaho Supreme Court first concluded that the public high schools of Idaho are common schools, as defined by the Idaho Constitution, and thus the State's constitutional provision applies to such institutions. *Id.* at 983. Second, the State's highest court determined that a levy "imposed generally on all students whether they participate in extra-curricular activities or not, becomes a charge on attendance at the school" and is not permissible. *Id.* However, the court carefully limited this statement of the law, explaining that "because social and extra-curricular activities are not necessary elements of a high school career, the constitution does not prohibit [schools] from setting fees to cover costs of such activities to be paid by students who wish to exercise an option to participate in them." *Id.* In contrast, the court found that "[t]extbooks are necessary elements of any school's activity. They represent a fixed expense peculiar to education" which is "indistinguishable from other fixed educational expense items such as school building maintenance or teachers' salaries. The [schools] may not charge students for such items because the common schools are to be 'free' as our constitution requires." *Id.* at 938–39.

Synthesizing these conclusions, the court held that the school could not make access to official school transcripts contingent on payment of the $25 fee because that fee included the costs of textbooks—which the schools could not impose upon

students—and was mandatory regardless of student participation or choice.[5]

Plaintiffs contend that their expert, Dr. Joki, has interpreted *Paulson* to hold that "systemic policies or practices of charging and collecting fees for various coursework, electives, supplies and other fees and charges, both 'curricular' and 'co-curricular'" are unconstitutional, Dkt. 161 ¶ 14, as are charges for consumables required to offer classes such as chemistry, computer integrated manufacturing, and pottery, *id.* ¶ 19, Dkts. 134-5–7, as well as parking and locker fees, Dkt. 134-3 ¶ 99, voluntary extracurricular activities, *id.* ¶ 37, school dances, yearbooks, and tickets to school games, *id.* ¶ 58, if they meet the "two-part funding test" developed by Dr. Joki for this litigation, *id.* ¶ 61.  The Plaintiffs in the proposed class paid widely ranging fees, e.g., from a special fee for "reserved parking" in a space "close to the building entrance for the year"—which costs more than a general parking space—to fees for band uniforms and band uniform cleaning, participation on the cheer team, school photos, activity cards providing admission to athletic events and school dances, driver's education, CPR training, a pharmaceutical technical education

_____

[5] Despite Plaintiffs' arguments to the contrary, this Court has never suggested that the *Paulson* decision established some sort of unqualified property interest for students and their guardians which prevents schools from assessing fees.  Instead, the Court noted that the Idaho Supreme Court "went to some effort to draw a line between proper and improper fees, and upheld the lower court's decision finding that a portion of the fees charged violated the free-education provision and requiring the school district to provide transcripts to the plaintiffs." Dkt. 81 at 9. This is a narrow holding, as the Court has emphasized throughout this litigation.

course, and participation in the Ski Club and Renaissance Club, to name only a few. *See* Dkt. 140 at 4–12.

III

"Class actions are governed by Federal Rule of Civil Procedure 23." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The party seeking class certification "bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a)" and, when monetary relief is sought, the requirements of Rule 23(b)(3). *Id.* "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Dukes*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). Therefore, "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* at 349. A class may only be certified if the Court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (quoting *General Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

To undertake this rigorous analysis, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and "[s]uch

an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim" because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013) (quotations and citations omitted).

IV

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350.  Plaintiffs fail to satisfy the demands of Rule 23 throughout this inquiry.

A. *Numerosity Requirement of Rule 23(a)(1)*

"Rule 23(a)(1) requires a party seeking class certification to show that 'the class is so numerous that joinder of all members is impracticable.'" *A.B. v. Hawai'i State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022) (quoting Fed. R. Civ. P. 23(a)(1)).  Here, the proposed class constitutes thousands of potential members, both current and former school-age children, and Defendants do not suggest Plaintiffs have failed to carry their burden as to numerosity.  No party has quantified the number, but the class could easily involve hundreds of thousands of students, even

in a smaller state like Idaho.[6]

B. *Commonality Requirement of Rule 23(a)(2)*

Commonality requires the Plaintiffs to establish that "there are questions of law or fact common to the class," meaning "that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349–50 (quotations and citations omitted). This inquiry requires Plaintiffs to show more than that "they have all suffered a violation of the same provision of law." *Id.* at 350. Rather, the claims must depend on a "common contention" "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *see also Falcon*, 457 U.S. at 157 (requiring the plaintiffs to establish "the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims").

As this Court previously recognized, the Supreme Court's decision in *Dukes* is controlling here. *See* Dkt. 81. In that case, Plaintiffs sought to bring a class action composed of more than a million women against Wal-Mart, alleging that the

---

[6] *See* Idaho State Dep't of Ed., About Our Students, available at https://idahoschools.org/state/ID (providing data indicating the State enrolled 302,910 students in 2021 alone).

decisions of Wal-Mart "supervisors over pay and promotion matters violate[d] Title VII by discriminating against women." *Dukes*, 564 U.S. at 342. The Supreme Court, however, found that the allegations that the Plaintiffs had "suffered a violation of the same provision of law," Title VII of the Civil Rights Act, were insufficient to support a finding of commonality—instead, Plaintiffs were required to show that the "claims will in fact depend on the answers to common questions." *Id.* at 350, 356. Because the resolution of one claim did not provide common answers for other claims, the Court concluded that the plaintiffs were missing the "glue" of commonality necessary to sustain a class action. *Id.* at 352. The Supreme Court explained:

> Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once.

*Id.* at 350.

The same must be said here. Plaintiffs allege that Defendants have undertaken unconstitutional takings by assessing fees for educational expenses, in violation of Article IX, Section 1, of the Idaho Constitution. While it is true that the claims are all based on alleged violations of this same provision of law, Plaintiffs have failed to establish how determining the constitutionality of any one fee assessed as to one class member will answer other questions posed by the statewide class. As the Idaho

Supreme Court made clear, whether a charge violates the constitutional guarantee to free common schools is a fact-intensive question, and "[b]ecause of the delicacy and difficulty in resolving constitutional problems we settle such questions on a case-by-case basis." *Paulson*, 463 P.2d at 937.

To determine the constitutionality of each fee will require a multitude of mini trials. Was the fee imposed upon all students, or only those who opted in? Was the fee assessed for some expense which constitutes a "necessary element[] of a high school career?" *Id.* at 938. How is the Court to determine which fees are necessary? Was a fee more akin to fees for "school building maintenance and teachers' salaries," expenses which a school cannot pass on to students, or more like "pencils and paper," costs of education over which a student can exercise choice as to the "quality or quantity" and therefore are expenses which schools *can* impose upon students? *Id.* If course credit was obtained, was the credit for a mandatory or elective course? If the fee was charged for a field trip or activity offered during a course, was it required or optional? And the answers to these questions can vary by student. For example, is the provision of a preferred parking space closer to the entrance of a school more necessary for a student who has a disability precluding his or her ability to walk, but less necessary for a student who can walk to school and lives within walking distance of the school? Further, even if one school uses a certain label for a charge, there is no assurance that the use of this label in another school refers to an

identical fee; under Idaho's case law, the Court must examine each individual charge to determine its constitutionality. *See Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019) ("[T]here is no evidence that every Appellant has experienced the same challenged practice or suffered the same injury.").[7]

These questions illustrate that a finding as to the constitutionality of any one fee does not determine the constitutionality of the myriad other fees assessed by the school, let alone by other schools in the same district and schools in other districts around the state. Therefore, this proposed class lacks the commonality necessary to "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *see also Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 967 (9th Cir. 2020) (denying class certification because "Davidson failed to show that employees suffered the common injury of being deprived of rest-

---

[7] The Court rejects the portions of the expert report submitted by Dr. Joki which claim to determine such questions of constitutional law. *See* Dkts. 134-3–8. That is the Court's role. Dr. Joki purports to himself determine the very constitutionality of each school fee, according to a formula of his design. Such determinations are the distinct province of a court. "[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008); *see also Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (legal analyses are "matters of law for the court's determination" and therefore are "inappropriate subjects for expert testimony"). Should an individual wish to interpret the law, he would be well-advised to heed Chief Justice John Marshall's famous articulation that "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

period premiums to which they were legally entitled"). There is no common charge or policy among the schools which Plaintiffs have pointed to, nor can the Court discern any. To determine the constitutionality of the patchwork of fees assessed across the State would require the Court to examine each and every challenged fee in each and every school—a direct contravention of Rule 23. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).

The categories proposed by Plaintiffs do not resolve the problem. The categories do not in any way follow the Idaho Supreme Court's decision or its reasoning in *Paulson*. Indeed, *Paulson* held that "because social and extra-curricular activities are not necessary elements of a high school career, the [state] constitution does not prohibit appellants from setting fees to cover costs of such activities to be paid by students who wish to exercise an option to participate in them." 463 P.2d at 938. This holding explicitly contradicts some or all of the fees sought to be recovered by the proposed Categories of 2, 3, and 4, which request damages for co-curricular fees, educational activity fees, and general fees such as for lockers or a parking pass. Therefore, even if the thousands of different fees assessed by Defendant School Districts could be sorted according to these four categories— which, as shown above, is itself an extremely dubious proposition—sorting the fees into the categories would not in any way address their constitutionality or provide a definitive answer common to all claims in one adjudication.

This failure is not ameliorated by Plaintiffs' purported waiver of their claims to what they designate as Category 3 & 4 fees, as their claims to each of the categories of fees are plagued by the same commonality problems. Ultimately, this motion to certify the proposed class is an effort to replace legal proceedings "with Trial by Formula," an approach unequivocally rejected by the Supreme Court. *Dukes*, 564 U.S. at 367.[8] It is no answer to say that a claims administrator could make these determinations for class members who submit claims. That is no different from Dr. Joki's improper attempt to categorize each fee into the four

---

[8] The Court additionally notes that the very definition of the class is inadequate. Plaintiffs propose a class composed of "all students enrolled in the School Districts and their parents and/or guardians, commencing in October 2012 and continuing thereafter, who have been or will be subjected to assessment for and/or paid fees which violate the Fifth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983." Dkt. 161 ¶ 28. Whether any individual student incurs a fee cannot be determined in advance, as which fees a student is assessed depends in large part on what choices a student makes regarding curriculum and activities. "[T]he party seeking class certification must demonstrate that an identifiable and ascertainable class exists," *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009), and Plaintiffs offer no means by which to identify the class members even in one school, nor across the state, who have been assessed fees unconstitutionally. Just because a fee has been assessed does not mean the fee was *unconstitutionally* assessed, *see Paulson*, 463 P.2d at 937, and "[w]ithout an objective, reliable way to ascertain class membership, the class quickly would become unmanageable, and the preclusive effect of final judgment would be easy to evade." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). Further, if a fee is assessed but never paid, or waived due to inability to pay, there can have been no taking proscribed under the Fifth Amendment, applied to the State by the Fourteenth Amendment. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2179 (2019) (Thomas, J., concurring) ("[A] violation of [the Takings] Clause occurs as soon as the government takes property without paying for it.").

categories he created, which he opined to be unconstitutional and subject to refund.

   *C. Typicality Requirement of Rule 23(a)(3)*

   "[T]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (quotations and citations omitted). As the Supreme Court has observed,

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Falcon*, 457 U.S. at 157 n.13.

   For the same reasons that commonality cannot be established here, Plaintiffs cannot "affirmatively demonstrate" that the members of the proposed class have suffered a similar injury, inflicted by the same course of conduct, sufficient to demonstrate the typicality of Plaintiffs' claims. *Dukes*, 564 U.S. at 350. Plaintiffs failed to ever explain in their pleadings or motions what fees the proposed class representative students and their guardians actually paid. And according to documentation submitted by the Defendants, the fees purportedly paid by the proposed class representatives vary widely. For example, one student paid for an

activity card, sophomore dues, sophomore pictures, a parking permit, and a yearbook; another paid only for drivers education; and yet another paid for participation on the softball team, a non-required aerobics class, a PE towel, a planner, a student activity fee, a locker rental, a donation to the graduating class, Ski Club, Renaissance Club, and the senior lagoon trip.  *See* Dkt. 140.   Some representatives of the proposed class paid no fees at all.  *See* Dkt. 134-1 at 13.  When one considers the disparity in the fees paid by the proposed class representatives against the backdrop of the hundreds of course offerings and activities offered in just the three named Defendant School Districts evaluated by Dr. Joki, *see, e.g.*, Dkts. 134-4–7, it is clear that the fees assessed to one student in one school are not typical of fees assessed against other students in the school, another student in another school, or of students in different school districts around the state.

Unlike cases in which the Ninth Circuit has found typicality because the proposed class suffered the same injury—for example, premature tire wear, *see Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010), each fee is a distinct alleged injury whose constitutionality must be determined on the facts of each fee.  Consequently, this is such a case where "no set of representatives can be 'typical' of this class."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 611 (1997) (citation omitted).

   *D. Adequacy of Representation Requirement of Rule 23(a)(4)*

Moreover, Plaintiffs have additionally failed to "satisfy Rule 23(a)(4)'s requirement that the named parties 'will fairly and adequately protect the interests of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(4)). Plaintiffs seek declaratory relief, damages for past fees assessed, attorney's fees, and a prospective injunction to bar the assessment of unconstitutional fees in the future. *See* Dkt. 161 at 18. "[A] class divided between holders of present and future claims" cannot proceed as one singular class, as separate interests pervade. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999). The payment of damages for fees paid in the past may preclude a school district's ability to provide such course offerings and activities free of charge in the future, putting the interests of past and present students in conflict. This is especially so in light of the pervasive under-funding that has plagued schools in Idaho for decades, to such a degree that the State's schools suffer from "documented facility deficiencies"—such that "57% of all Idaho school buildings had 'serious' safety concerns"—along with findings that "Idaho's schools, particularly those in rural areas, are stretched to the breaking point in meeting the educational needs of their charges." *Idaho Schs. for Equal Educ. Opportunity v. State*, 129 P.3d 1199, 1205, 1204 (2005).

To state it more simply, "because the abundance of individual issues in this case bars a finding of typicality, adequacy of representation is necessarily lacking as well." *Sweet v. Pfizer*, 232 F.R.D. 360, 370 (C.D. Cal. 2005).

### E.  Satisfaction of the Requirements of Rule 23(b)(3)

In order to seek monetary recovery by class adjudication, Plaintiffs must additionally satisfy Rule 23(b)(3), which requires a court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Dukes*, 564 U.S. at 362.  Because "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," *Comcast*, 569 U.S. at 34, Plaintiffs necessarily fail to satisfy Rule 23(b)(3) for the same reasons they failed to meet their burden under Rule 23(a).  *See also Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 610 (S.D. Cal. 2010) ("It is hard to see how the expenses they incurred in the process could be ascertained in one fell swoop, or even several fell swoops.").  This proposed class action, as structured by Plaintiffs, is in no way "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[9]

V

The Court is mindful of the fact that "education is perhaps the most important

---

[9] The Court notes that while Plaintiffs pled class allegations as to the Defendants, *see* Dkt. 161 ¶¶ 37–44, Plaintiffs have not moved for certification of a Defendant class, *see* Dkts. 134, 134-1 at 18 (requesting certification of and defining Plaintiff class only).  The Court therefore does not address the issue.

function of state and local governments.  Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society."  *Brown v. Bd. of Ed. of Topeka*, 347 U.S. 483, 493 (1954).  Moreover, the Court is sympathetic to the plight of students in Idaho.  As the Idaho Supreme Court has recognized, "the current funding system is simply not sufficient to carry out the Legislature's duty under the constitution."  *Idaho Schools*, 129 P.3d at 1208.  Unfortunately, regardless of the policy and funding choices made by the State Legislature, *see id.*, the Court is required to abide by the requirements of Rule 23 of the Federal Rules of Civil Procedure, and Plaintiffs have failed to establish entitlement to class certification for the relief sought here.  For these reasons, Plaintiff's Renewed Motion for Class Certification, Dkt. 134, is DENIED with prejudice.

   **IT IS SO ORDERED.**

DATED: June 07, 2022

Richard C. Tallman
Richard C. Tallman
UNITED STATES CIRCUIT JUDGE